### *United States District Court*
### *For the District of Massachusetts*
### *Western Division*

| | | |
|---|---|---|
| In re | ) | |
| **Wayne Puffer** | ) | Civil Action No. |
| | ) | |
| Debtor | ) | |
| | ) | |
| **L. Jed Berliner, Esquire**, | ) | |
| appellant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Denise M. Pappalardo, Esquire**, | ) | |
| Standing Chapter 13 Trustee, | ) | |
| appellee | ) | |

## <u>MOTION FOR STAY PENDING APPEAL</u>

L. Jed Berliner, Esquire is the appellant of as-yet undocketed appeal of the bankruptcy court's September 27, 2012 order denying his fees and ordering disgorgement. On October 25, 2012, the bankruptcy court denied his motion for a stay pending appeal. Berliner now requests a stay pending appeal of the bankruptcy court's October 25, 2012 order from this Court pending the resolution of his as-yet undocketed appeal therefrom. In support thereof, appellant states:

1.     This Court has already visited this matter. On July 8, 2011, in C.A. No. 10-cv-30225-MAP, this Court affirmed the previous appeal of the bankruptcy court's denial of appellant's fees which were based on appellant having provided services related to a fee-only Chapter 13 filing.

2.      On March 22, 2012, the U.S. Court of Appeals for the First Circuit reversed and remanded. Please see Exhibit A.

3.      On April 25, 2012, this Court remanded the matter to the bankruptcy court following a reversal and remand by the. Please see Exhibit B.

5.      On September 27,2012, the bankruptcy court affirmed itself after holding an evidentiary hearing on whether special circumstances existed to support the good faith of a fee-only Chapter 13 filing. Please see Exhibit C.

6.      On October 11, 2012, the appellant timely filed his Notice of Appeal and Election of Appeal with the bankruptcy court. On October 25, 2012, the appellant timely filed his statement of issues and designation of record. The deadline for the appellee trustee's designation of additional papers, after which time the bankruptcy clerk is to forward the designated documents to this Court.

7.      On October 11, 2012, the appellant timely filed his Motion for Stay Pending Appeal. Please see Exhibit D.

8.      On October 25, 2012, the bankruptcy court denied appellant's motion for a stay pending appeal. Please see Exhibit E.

9.      Pursuant to LR 7.1(A)(2), appellant certifies that he conferred with the Standing

Chapter 13 Trustee in a good faith attempt to narrow or resolve the issues. The

conference took place by telephone on November 8, 2012 at about 4:05 pm.


## STANDARDS AND APPLICATIONS


10.     "It is well settled that, upon request of an appellant, a court should grant a stay

of an order subject to appeal if:

> (1) there is a likelihood of success on the merits of the appeal;
>
> (2) the moving party will suffer irreparable harm if a stay is not
> granted;
>
> (3) the harm to the moving party if the stay is not granted is greater
> than the injury to the opposing party if the stay is granted; and
>
> (4) the public interest would not be adversely affected by the
> issuance of they stay."

In re Withrow, 2008 Bankr. LEXIS 2125 (Bankr. D. Mass. July 25, 2008); citing

to *In re Miraj*, 201 B.R. 23, 26 (Bankr. D. Mass. 1996) among other cases.


11.     There must be some presence of each of these factors to support a stay,

although not each factor need be accorded equal weight. *Ibid.*


12.     The first factor, the "likelihood of success", is "best understood as a

determination that the movant has a 'substantial case' or a 'strong case on

appeal'". *Ibid.*

13.    The standards for allowance of professional compensation are found in Section
       330 of the U.S. Bankruptcy Code, 11 U.S.C. § 330.  They are the benefit and
       necessity of such services to the debtor, § 330(a)(4)(B) and the itemized factors
       of §330(a)(3).

14.    These standards are to be encompassed into the lodestar approach in this
       Circuit.  *Lopez v. Consejo de Titulares Del Condominio Carolina Court Apartments*,
       405 B.R. 24 (B.A.P. 1st Cir. 2009).

15.    Appellant believes that he has a "substantial case" or "strong case on appeal"
       and a reasonable likelihood of success. These are itemized in Exhibit D, his
       Motion for Stay Pending Appeal and this Court is respectfully referred to that
       document.

16.    Appellant emphasizes three issues here, without intending to exclude the others
       already presented to the bankruptcy court and memorialized in Exhibit D.

       a.    Appellant made an argument which has been found to be in good faith in
             four other jurisdictions, those of Kansas and the Western, Central, and
             Eastern Districts of North Carolina, but without any precedent throughout
             the First Circuit. The First Circuit Court's opinion itself begins by noting the
             national split among bankruptcy courts.

As a matter of federal common law, "relying on a judicial decision is not sanctionable, even if the court disagrees with its holding." *Kale v. Obuchowski*, 985 F.2d 360, 362 (7th Cir. 1993) (citation omitted). See also *Burns v. George Basilikas Trust*, 599 F.3d 673 (D.C. Cir. 2010) (bankruptcy court's sanction against debtor's counsel was reversed by the circuit court because counsel's position was supported by one case elsewhere).

Indeed, the Fifth Circuit recently approved a fee-only Chapter 13 filing. *Sikes v. Crager (In re Crager)*, 691 F.3d 671 (2012).

The total denial of all fees violates federal common law. Appellant further suggests that his first amendment rights may have been violated by chilling the presentation of a legal strategy approved elsewhere, and he intends to develop in his later brief.

b.     Appellant achieved a reversal and remand from the Circuit Court of Appeals. He should be compensated for these appellate services. *In re Wind N' Wave*, 509 F.3d 940 (9th Cir. 2007). The recent *Crager* decision by the Fifth Circuit cited immediately above, after approving a fee-only Chapter 13 filing, separately ruled that the appeal transformed a routine case into a complicated proceeding and allowed the standard Chapter 13 fee in that jurisdiction, which is all that appellant seeks here.

c.      The bankruptcy court makes much of the delay between the debtor
retaining the appellant and the issuance of the ultimate discharge. That
court ignored the total inability of the debtor to afford more than $100
monthly toward legal fees, which would have delayed the issuance of a
Chapter 7 discharge to the same extent as what happened here. In fact,
the debtor still has not repaid the $500.00 he borrowed from a friend for
the costs advance required by the appellant.

17.     Appellant asserts that he will suffer irreparable harm if the stay is not granted.
The debtor has limited means and assets. It is unlikely that he will easily be able
to satisfy a money judgment if appellant is successful.  .

18.     Appellant asserts that the harm to the moving party if the stay is not granted is
greater than the injury to the opposing party if the stay is granted.  In this context,
the opposing party is the trustee acting on behalf of the debtor. His harm, if the
stay is granted, is a delay in payment of about $2,600.  This delay is well-
outweighed by appellant's harm in trying to recovery the payment after it is spent
by the debtor of limited means.

19.     Appellant finally asserts that the stay will not adversely affect the public interest.
Indeed, the public is best served by a stay which will permit a full and fair review
of professional compensation without possible injury to appellant.

WHEREFORE appellant prays for a stay of further proceedings on the debtor's proposed Second Amended Plan pending appeal.

Appellant

/s/ Jed Berliner
L. Jed Berliner, Esquire, BBO # 039950
Meghan R. Farrell, Esquire, BBO # 670335
Berliner Law Firm
95 State Street, Suite 1010
Springfield, MA  01103-2081
telephone:  (413) 788-9877
facsimile:  (413) 746-9877
email:  jed@berlinerlaw.com
email: meghan@berlinerlaw.com

### Certificate of Service

The undersigned certifies that this Motion was served electronically on the appellee Standing Chapter 13 Trustee at her bankruptcy-court registered address: denisepappalardo@ch13worc.com, and was also mailed to the debtor by first class mail with postage prepaid and return address provided.

Date:  November 8, 2012                    /s/ Jed Berliner
                                           L. Jed Berliner

**EXHIBIT A - DECISION BY THE U.S.**

**COURT OF APPEALS FOR THE FIRST CIRCUIT**



1 of 10 DOCUMENTS

**IN RE WAYNE ERIC PUFFER, Debtor. L. JED BERLINER, Movant, Appellant, v. DENISE M. PAPPALARDO, Trustee, Appellee.**

**No. 11-1831**

**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

**674 F.3d 78; 2012 U.S. App. LEXIS 6037; Bankr. L. Rep. (CCH) P82,196**

**March 22, 2012, Decided**

**PRIOR HISTORY:** [**1]
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. Hon. Michael A. Ponsor, U.S. District Judge. Hon. Henry J. Boroff, U.S. Bankruptcy Judge.
Berliner v. Pappalardo (In re Puffer), 453 B.R. 14, 2011 U.S. Dist. LEXIS 73602 (D. Mass., 2011)

**DISPOSITION:** We reverse the order appealed from and remand to the district court with instructions to vacate the bankruptcy court's fee order and remand to that court for further proceedings consistent with this opinion. All parties shall bear their own costs.

**COUNSEL:** L. Jed Berliner, with whom Meghan R. Bristol and Berliner Law Firm were on brief, for appellant.

David G. Baker on brief for National Association of Consumer Bankruptcy Attorneys, amicus curiae.

Lynne F. Riley, with whom Riley Law Group LLC was on brief, for appellee.

**JUDGES:** Before Selya, Circuit Judge, Souter,* Associate Justice, and Lipez, Circuit Judge. LIPEZ, Circuit Judge, concurring in the judgment.

* Hon. David H. Souter, Associate Justice (Ret.)

of the Supreme Court of the United States, sitting by designation.

**OPINION BY:** SELYA

**OPINION**

[*79] **SELYA, Circuit Judge**. This bankruptcy case involves a dispute over attorneys' fees. Resolving this dispute requires us to address a question of first impression at the appellate level concerning the propriety of so-called "fee-only" plans in Chapter 13 bankruptcy cases. [**2] This is an issue that has divided the bankruptcy courts. Compare In re Paley, 390 B.R. 53, 59 (Bankr. N.D.N.Y. 2008) (rejecting fee-only plan as contrary to spirit and purpose of Bankruptcy Code), and In re Dicey, 312 B.R. 456, 459-60 (Bankr. D.N.H. 2004) (same), with In re Elkins, No. 09-09254-8, 2010 Bankr. LEXIS 1085, 2010 WL 1490585, at *3 (Bankr. E.D.N.C. Apr. 13, 2010) (stating that "[t]here are many permissible reasons to file [fee-only] chapter 13 cases"), and In re Molina, 420 B.R. 825, 829-33 (Bankr. D.N.M. 2009) (upholding good faith of fee-only plan). The bankruptcy court in this instance concluded that such plans are per se proffered in bad faith and disallowed virtually all attorneys' fees. On an intermediate appeal, the district court upheld the bankruptcy court's ruling.

The matter has now been appealed to this court. We have had the benefit of [*80] briefing (including the

Case 3:12-cv-30190-JLT   Document 1   Filed 11/08/12   Page 10 of 37

Page 2

674 F.3d 78, *80; 2012 U.S. App. LEXIS 6037, **2;
Bankr. L. Rep. (CCH) P82,196

helpful submission of an amicus) and oral argument. After careful consideration, we hold that fee-only plans are not per se in bad faith. Consequently, we reverse the order appealed from and remand for further proceedings consistent with this opinion.

The background facts are easily stated. The debtor, Wayne Eric Puffer, had amassed [**3] unsecured liabilities totaling almost $15,000. His anticipated disposable income amounted to approximately $100 per month. He concluded that he could never satisfy his increasingly impatient creditors and decided to consider the advisability of bankruptcy protection. With this in mind, he visited the appellant, L. Jed Berliner, an attorney specializing in bankruptcy matters, in January of 2007.

After some discussion, the appellant presented the debtor with two options. First, he could file for straight bankruptcy under Chapter 7, which is the conventional course when an individual has debts that dwarf his income and assets. See 11 U.S.C. §§ 701-784. Chapter 7 proceedings are straightforward; they usually can be concluded within a matter of months. A successful Chapter 7 application discharges virtually all debts, including any unpaid legal fees. See id. § 727.

The second option that the appellant presented to the debtor was somewhat less conventional. He suggested that the debtor could file for Chapter 13 protection. See id. §§ 1301-1330. Chapter 13 proceedings must be kept open for a minimum of 36 months unless all affected debts are to be fully satisfied within a shorter period of [**4] time. See id. § 1325(b)(4). If successful, a Chapter 13 proceeding allows a debtor to discharge his debts over time, provided that he submits a plan, which must be approved by the bankruptcy court, for satisfying some of his creditors. See id. §§ 1321-1322, 1328.

The appellant stated in substance that he would not represent the debtor in a Chapter 7 proceeding unless and until the debtor paid him, up front, the whole of his anticipated legal fees (which he estimated to be around $2,300). If, however, the debtor chose the Chapter 13 alternative, he would not have to pay all of his legal fees immediately but, rather, could pay them over time as part of the Chapter 13 plan. The appellant estimated that the fees associated with a Chapter 13 proceeding would total $4,100.

At that moment, the debtor did not have sufficient

funds on hand to pay the legal fees requested for a Chapter 7 filing. Faced with the appellant's unwillingness to handle a Chapter 7 matter, the debtor opted to seek Chapter 13 protection, engaged the appellant as his counsel for this purpose, and paid him $500 on account.

The debtor, counseled by the appellant, prepared the necessary paperwork. As part of that paperwork, [**5] he submitted a Chapter 13 plan to the bankruptcy court. See id. §§ 1321-1322. The plan called for the debtor to pay into the bankruptcy estate $100 per month for 36 months (a total of $3,600). Of that amount, only about $300 (or about 2% of the roughly $15,000 owed by the debtor) would be available for distribution to general creditors.[1] Conversely, the appellant would receive through the plan more than $2,900 for legal services. The remainder of the bankruptcy estate (about $400) would cover the fees of the standing trustee. See id. § 1326(b)(2). A Chapter 13 plan of this genre is colloquially known as a "fee-only" plan because it pays the debtor's lawyer and the trustee their professional fees but [*81] leaves the general creditors holding an empty (or nearly empty) bag.

> 1  The record does not contain a reliable estimate of what the creditors would have received if a Chapter 7 proceeding had been initiated at this point.

The bankruptcy court rejected the proposed Chapter 13 plan on the grounds that neither the debtor's Chapter 13 petition nor the plan itself was submitted in good faith. See id. § 1325(a)(3), (7).[2] In reaching this conclusion, the court cited In re Buck, 432 B.R. 13, 21-22 (Bankr. D. Mass. 2010), [**6] which held that fee-only Chapter 13 plans are per se submitted in bad faith.

> 2  Although the courts below found both the petition and the plan to have been filed in bad faith, for simplicity's sake we henceforth refer only to the plan. Our holding is, of course, equally applicable to the filing of the petition.

After rejecting the Chapter 13 plan, the bankruptcy court gave the debtor three options: he could (i) amend his Chapter 13 plan; (ii) convert his bankruptcy case to Chapter 7; or (iii) dismiss the case entirely. The debtor elected the second option and converted his case to Chapter 7. He ultimately received a discharge under that chapter.

Case 3:12-cv-30190-JLT   Document 1   Filed 11/08/12   Page 11 of 37

Page 3

674 F.3d 78, *81; 2012 U.S. App. LEXIS 6037, **6;
Bankr. L. Rep. (CCH) P82,196

Meanwhile, the appellant moved the bankruptcy court to award him $2,872 in fees and expenses arising from his representation of the debtor in the Chapter 13 proceedings. See 11 U.S.C. § 330(a)(4)(B). The appellant anticipated that this emolument would be paid out of the Chapter 13 estate, which the debtor had endowed monthly from the filing of the Chapter 13 plan until the date of the conversion to Chapter 7. The bankruptcy court awarded the appellant only $299 (the amount that it cost to file the debtor's converted Chapter 7 petition). Because [**7] the appellant had already collected a $500 retainer in advance of the filing of the Chapter 13 petition, this order effectively required him to disgorge more than $200. The court grounded its order on the proposition that an attorney is not entitled to professional fees for time spent preparing a Chapter 13 plan that he knows or has reason to know is submitted in bad faith. See In re Buck, 432 B.R. at 22-24.

The appellant sought review of the fee order in the district court. See 28 U.S.C. § 158(a). The trustee opposed the appeal, and the district court affirmed the disputed order. This timely second-level appeal followed.

We review a bankruptcy court's order directly without reference to an intermediate affirmance by the district court. See City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 87 (1st Cir. 2011). In performing this task, we assay the bankruptcy court's conclusions of law de novo, Donarumo v. Furlong (In re Furlong), 660 F.3d 81, 86 (1st Cir. 2011), its factual findings for clear error, id., and its quantification of fees for abuse of discretion, Prebor v. Collins (In re: I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998) (per [**8] curiam).

This is a rifle-shot appeal. It raises only a single issue: the propriety vel non of the bankruptcy court's award of fees to the appellant. But the bankruptcy court hinged that award on its preludial ruling that fee-only Chapter 13 plans are per se in bad faith. Consequently, we must start by considering whether the bankruptcy court erred as a matter of law when it adopted that per se rule.

The requirement that Chapter 13 plans be filed in good faith springs directly from the Bankruptcy Code. See 11 U.S.C. § 1325(a)(3). The term "good faith" is not specially defined, and the legislative history provides little insight into its meaning. See In re Schaitz, 913 F.2d 452, 453 (7th Cir. 1990); Handeen v. LeMaire (In re

LeMaire), 898 F.2d 1346, 1348 (8th Cir. 1990) (en banc). By like token, this court has [*82] had no occasion to demarcate the contours of section 1325's good faith element. We have, however, explicated "good faith" in the related context of a debtor who attempts, pursuant to 11 U.S.C. § 706(a), to convert a Chapter 7 proceeding to Chapter 13. See Marrama v. Citizens Bank of Mass. (In re Marrama) (Marrama I), 430 F.3d 474, 482 (1st Cir. 2005), aff'd, Marrama v. Citizens Bank of Mass. (Marrama II), 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

In [**9] Marrama I, we measured good faith by applying a totality of the circumstances test. Id. This test considered, among other things, the veracity of the debtor's representations to the court and an assessment of whether the debtor was abusing the bankruptcy process. See id.; cf. Barbosa v. Soloman, 235 F.3d 31, 40 n.13 (1st Cir. 2000) (holding that under 11 U.S.C. § 1329, "lack of good faith can be shown by manipulation of code provisions" (internal quotation marks omitted)).

We believe that the totality of the circumstances approach to adjudicating good faith should apply equally to inquiries under section 1325. This belief is fortified by the fact that other courts interpreting section 1325's "good faith" element have performed a comparably holistic balancing of relevant factors. See, e.g., Robinson v. Tenantry (In re Robinson), 987 F.2d 665, 668 & n.7 (10th Cir. 1993) (per curiam); In re LeMaire, 898 F.2d at 1348-49; Ohio Student Loan Comm'n v. Doersam (In re Doersam), 849 F.2d 237, 239 (6th Cir. 1988); Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211-12 (B.A.P. 1st Cir. 2005).

The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor [**10] here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith. Cf. Marrama II, 549 U.S. at 375 n.11 (declining to articulate the precise contours of "good faith" in an analogous context). But we, like other courts, are reluctant to read per se limitations into section 1325's good faith calculus. See Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865, 868 (2d Cir. 1983) (per curiam) (collecting cases). After all, Congress has legislated nine requirements that must be met before a Chapter 13 plan can be confirmed, see 11 U.S.C. § 1325(a)(1)-(9), and we do not think that it is our province

674 F.3d 78, *82; 2012 U.S. App. LEXIS 6037, **10;
Bankr. L. Rep. (CCH) P82,196

to insist upon a tenth.

In all events, good faith is a concept, not a construct. Importantly, it is a concept that derives from equity. See Fields Station LLC. v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner), 490 F.3d 21, 24 n.1 (1st Cir. 2007); Rivera-Lopez v. Mun'y of Dorado, 979 F.2d 885, 887 (1st Cir. 1992). This matters because equitable concepts are peculiarly insusceptible to per se rules. See Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 383 (1st Cir. 2004); [**11] see also Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 321 (1st Cir. 1989) (en banc) (stating that "the hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis").

Against this backdrop, we reject the bankruptcy court's holding that fee-only Chapter 13 plans are per se in bad faith. This is not to say, however, that we disregard the bankruptcy court's concerns. The fundamental purpose undergirding Chapter 13 is to allow a debtor to pay his creditors over time, Thompson v. Gen. Motors Acceptance Corp., 566 F.3d 699, 706-07 (7th Cir. 2009); Metro Emps. Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d 1030, 1033 (6th Cir. 1988), and fee-only plans, by definition, leave the [*83] vast majority of debts unsatisfied. Moreover, fee-only arrangements may be vulnerable to abuse by attorneys seeking to advance their own interests without due regard for the interests of debtors; and such plans, by their very nature, create that appearance.

Notwithstanding these shortcomings, endorsing a blanket rule that fee-only Chapter 13 plans are per se submitted in bad faith would be to throw out the baby with the bathwater. [**12] While fee-only plans should not be used as a matter of course, there may be special circumstances, albeit relatively rare, in which this type of odd arrangement is justified. Given this possibility, prudence dictates that we hew to the overarching principle that the presence or absence of good faith should be ascertained case by case. See, e.g., Marrama I, 430 F.3d at 482.

Let us be perfectly clear. This opinion should by no means be read as a paean to fee-only Chapter 13 plans. The dangers of such plans are manifest, and a debtor who submits such a plan carries a heavy burden of demonstrating special circumstances that justify its submission. Cf. Hardin v. Caldwell (In re Caldwell), 895

F.2d 1123, 1126 (6th Cir. 1990) (explaining that "[t]he party who seeks a discharge under Chapter 13 bears the burden of proving good faith").

On the record before us, we cannot tell whether or not special circumstances sufficient to justify a fee-only Chapter 13 plan existed here. The appellant argues that such circumstances did exist, but we are chary about his explanation. The appellant suggests that the debtor filed a fee-only Chapter 13 plan because that was the only means of securing the appellant's [**13] representation. There is no showing, however, that the debtor had a pressing need for the appellant's services, that he could not secure adequate representation that he could afford without resorting to a fee-only plan, or that it was infeasible to proceed pro se.[3] Furthermore, the debtor himself asserted that he could have retained the appellant for representation in Chapter 7 -- a course usually more in line with the interests of the debtor, the creditors, and the bankruptcy court -- if he had waited three months longer; and the record contains no compelling reason why a three-month wait would have been intolerable.

> 3   We do not mean to imply that any of these factors are necessary to a finding of special circumstances. Rather, we enumerate them to illustrate why we are unready to accept the conclusory claim of special circumstances advanced by the appellant here.

This tees up the issue on appeal: the propriety of the bankruptcy court's fee award. While bankruptcy courts have broad discretion in fashioning fee awards, In re: I Don't Trust, 143 F.3d at 3, an award based on an error of law is invariably an abuse of that discretion, see Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 75 (1st Cir. 2002).

In [**14] the case at hand, the bankruptcy court did not consider the totality of the circumstances when measuring whether the debtor's Chapter 13 plan was presented in good faith. Instead, it mistakenly concluded that fee-only Chapter 13 plans are per se filed in bad faith and fashioned the fee award on that premise. Thus, the fee award rested on a legal error and must be vacated. See, e.g., Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009) (en banc); Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 30-34 (1st Cir. 2002).

What remains to be done is for the bankruptcy court to reconsider, under the proper legal regime, the question

Case 3:12-cv-30190-JLT   Document 1   Filed 11/08/12   Page 13 of 37

Page 5

674 F.3d 78, *83; 2012 U.S. App. LEXIS 6037, **14;
Bankr. L. Rep. (CCH) P82,196

of the appellant's entitlement to fees and to issue a new order in that regard. We take no [*84] view as to the amount of fees, if any, that should be awarded.

**We reverse the order appealed from and remand to the district court with instructions to vacate the bankruptcy court's fee order and remand to that court for further proceedings consistent with this opinion. All parties shall bear their own costs**.

**CONCUR BY:** LIPEZ

**CONCUR**

   **LIPEZ, Circuit Judge**, concurring in the judgment.

**I**.

   The issue of fee-only Chapter 13 petitions has emerged in recent years largely as a result of two events. [**15] The first was the Supreme Court's decision in Lamie v. U.S. Tr., 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004), which held that attorney's fees are not payable from estate funds in a Chapter 7 proceeding except in limited circumstances. Id. at 538-39 (construing 11 U.S.C. § 330(a)(1)). Attorneys who advise debtors on Chapter 7 filings thus may be unable to collect their fees once the plans are in place, prompting them to request payment in full up front. The second event was enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), see 11 U.S.C. §§ 101-1532, which tightened the eligibility requirements for Chapter 7 bankruptcy and made the process more complicated -- increasing the need for legal advice and, in turn, the cost of filing for bankruptcy. See In re Beck, 2007 Bankr. LEXIS 517, at *7 (D. Kan. Feb. 21, 2007) (referring to the "significantly increased burdens" placed on debtors' attorneys after BAPCPA); Angela Litwin, The Affordability Paradox: How Consumer Bankruptcy's Greatest Weakness May Account for Its Surprising Success, 52 Wm. & Mary L. Rev. 1933, 1935-37 (2011) (hereinafter The Affordability Paradox) (noting that the BAPCPA "made consumer bankruptcy more expensive [**16] for all debtors" and that "one of BAPCPA's major effects was a rise in the cost of representation").[4]

   4  In The Affordability Paradox, Professor Litwin stated that "the heart" of BAPCPA was "the means test that bars relatively well-off debtors from Chapter 7." She went on to note, however, that

> BAPCPA also subjected all filers to increased paperwork, stricter deadlines, new prerequisites such as credit counseling, and mandatory dismissals for myriad procedural mistakes. These new technical requirements caused many commentators to worry that the statute's real effect would be to increase costs and reduce the bankruptcy access of all debtors, especially the worst off.

52 Wm. & Mary L. Rev. at 1936 (footnotes omitted).

   As I understand it, the fee-only Chapter 13 petition can be a creative solution for the "Lamie problem." See, e.g., In re Buck, 432 B.R. 13, 22 n.15 (Bankr. D. Mass. 2010) (noting that Lamie "exacerbated the problem" of debtors' inability to afford attorney's fees); In re Johnson, 397 B.R. 486, 489-90 (Bankr. E.D. Cal. 2008) (noting "the problem of the puzzle lying in the wake of the Lamie holding"). As a high priority expense under Chapter 13, attorney's fees may properly be [**17] scheduled for payment in a Chapter 13 plan ahead of other types of debts. See generally Michelle Arnopol Cecil, A Reappraisal of Attorneys' Fees in Bankruptcy, 98 Ky. L.J. 67, 73-74, 84 (2009) (citing Lamie, 540 U.S. at 537); 11 U.S.C. § 330(a)(4)(B). At least some debtors who cannot afford an attorney-assisted Chapter 7 filing -- because the attorney, understandably, would expect to be paid up front -- can afford to pay for an attorney to assist with a Chapter 13 filing because the fee will be paid in post-petition installments. See Buck, 432 B.R. at 22 n.15 [*85] (recognizing that "some debtors are simply not able to afford the attorneys fees associated with filing a Chapter 7 case"). That approach results, of course, in the situation we face in this case: the debtor is in such bad shape that he is eligible to file for an immediate discharge of his debts under Chapter 7, but he files under Chapter 13 with his attorney's fees as the only (or dominant) debt scheduled to be paid over the course of the Chapter 13 plan (which typically runs three to five years).

   Like my colleagues, I think that the totality of the circumstances test is the appropriate method to evaluate whether a particular [**18] fee-only Chapter 13 plan meets the good-faith requirements of the Bankruptcy

Case 3:12-cv-30190-JLT   Document 1   Filed 11/08/12   Page 14 of 37

Page 6

674 F.3d 78, *85; 2012 U.S. App. LEXIS 6037, **18;
Bankr. L. Rep. (CCH) P82,196

Code. At this juncture, however, I would leave application of the test entirely to bankruptcy judges instead of prescribing a rule requiring "special circumstances" limited to "relatively rare" instances. As the majority notes, the bankruptcy courts have expressed mixed views on fee-only plans as their experience accumulates in the wake of Lamie and BAPCPA's enactment. We should allow that process to continue so that we have an adequate basis for deciding whether there is a need to construct an appellate rule disfavoring such plans in every case. Presently, I do not think we have that basis.

**II**.

We have observed that the Bankruptcy Code's purposes are two-fold: to give the deserving debtor a fresh start and to maximize the payment to creditors. See In re Cunningham, 513 F.3d 318, 324 (1st Cir. 2008) ("The Supreme Court has stated that 'a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement [**19] of preexisting debt.'" (quoting Grogan v. Garner, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991))); In re Marrama, 430 F.3d 474, 477 (1st Cir. 2005) (noting "the principle that all the debtor's assets are to be gathered and deployed in a bona fide effort to satisfy valid claims"); In re Sullivan, 326 B.R. 204, 211-12 (1st Cir. BAP 2005) (stating that a primary objective of bankruptcy is "to relieve the honest but unfortunate debtor from the weight of oppressive indebtedness, allowing the debtor to start afresh"). A fee-only Chapter 13 plan may accomplish little toward the goal of satisfying creditors, but such a plan may nonetheless be essential to free "the honest but unfortunate debtor" from intolerable circumstances.

Bankruptcy judges evaluating a particular fee-only plan may properly take into account whether the plan "is consistent with the spirit and purpose of [Chapter 13] -- rehabilitation through debt repayment," In re Molina, 420 B.R. 825, 831 (Bankr. D.N.M. 2009) (quoting In re Paley, 390 B.R. 53, 58 (Bankr. N.D.N.Y. 2008)) -- but I fear that circumscribing the totality of the circumstances assessment with the requirement of special circumstances will in practical effect impose on debtors the [**20] more daunting task of disproving bad faith rather than proving good faith. I am therefore reluctant to confine

what should be, in the majority's apt words, a "holistic balancing of relevant factors."

I must emphasize that I agree with my colleagues' view that a Chapter 13 plan calling for payment of the debtor's attorney's fee, but none (or virtually none) of the outstanding debts that triggered the need for bankruptcy, warrants close examination. The typical attorney's fee for a Chapter 13 case is higher than the fee for a typical Chapter 7 case, see, e.g., In re [*86] Elkins, 2010 Bankr. LEXIS 1085, at **4-5 (Bankr. E.D.N.C. April 13, 2010), and there undoubtedly are costs imposed on the bankruptcy system as a whole when a debtor eligible for Chapter 7 relief prolongs the bankruptcy process by filing a Chapter 13 plan for the sole purpose of paying attorney's fees. Moreover, as the majority observes, the fee-only structure may leave unknowledgeable debtors vulnerable to attorneys seeking to maximize their compensation. See Kerry Haydel Ducey, Note, Bankruptcy, Just for the Rich? An Analysis of Popular Fee Arrangements for Pre-Petition Legal Fees and a Call to Amend, 54 Vand. L. Rev. 1665, 1703 (2001) [**21] (hereinafter Just for the Rich?) (noting that, "[i]n some cases, self interest . . . compels the attorney to advise debtors to file Chapter 13 or other high percentage payment plans when Chapter 7 would actually better serve the debtor" (footnote omitted)).

Nonetheless, we must keep in mind that a struggling debtor who lacks the resources to pay a Chapter 7 attorney's fee up front has limited options. Although he theoretically could proceed pro se, I doubt that bankrupt individuals will ordinarily be able to navigate the complexities of the bankruptcy process on their own. See, e.g., In re Beck, 2007 Bankr. LEXIS 517, at *19-20 (stressing the importance of counsel for debtors and noting that the court "routinely" saw debtors giving away rights or property they would be entitled to retain). Indeed, an empirical study indicating that the percentage of pro se debtors has increased in the aftermath of BAPCPA shows that such cases are not succeeding. See The Affordability Paradox, 52 Wm. & Mary L. Rev. at 1938 ("[T]he high pro se failure rate since 2005 suggests that it is reasonable to equate the inability to afford a lawyer with having less than full access to the bankruptcy system."); [**22] see also Just for the Rich?, 54 Vand. L. Rev. at 1667 ("Legal counsel is indispensable if a debtor is to effectively file for bankruptcy. The bankruptcy laws are complex, and legal counsel is often crucial in helping the debtor make an informed decision based on his

Case 3:12-cv-30190-JLT   Document 1   Filed 11/08/12   Page 15 of 37

Page 7

674 F.3d 78, *86; 2012 U.S. App. LEXIS 6037, **22;
Bankr. L. Rep. (CCH) P82,196

unique circumstances and the available alternatives." (citing William C. Hillman, Personal Bankruptcy: What Every Debtor and Creditor Needs to Know 20 (1993) ("Many mistakes people make by trying to do it on their own often cannot be corrected later. Even the simplest choices involve uncertainties and risks if you are not thoroughly familiar with the law."))). Moreover, lawyers play an important role in the bankruptcy system beyond their direct assistance to clients. See In re Beck, 2007 Bankr. LEXIS 517, at *9-10 (noting that pro se debtors increase the administrative costs for the court); The Affordability Paradox, 52 Wm. & Mary L. Rev. at 2010 ("At the most basic level, lawyers help the system run smoothly.").

A debtor could attempt to find cheaper, or free, legal services, but I have no reason to think that counsel fees vary widely or that competent bankruptcy legal advice is readily available for free. See In re Beck, 2007 Bankr. LEXIS 517, at *21-22 [**23] (noting the absence of evidence that "there are sufficient attorneys available to file Chapter 7 cases pro bono, or for a reduced rate"); In re Nieves, 246 B.R. 866, 873 (Bankr. E.D. Wis. 2000) ("This court fully recognizes that . . . debtors who cannot afford to pay attorney's fees before filing for bankruptcy may have difficulty in obtaining legal counsel."). We should have a better understanding of critical facts like these before we fashion a rule that may, in practical effect, make fee-only Chapter 13 plans unavailable.

The majority notes that the debtor in this case stated that he could have saved enough money in three months to pay [*87] Chapter 7 fees, and they suggest that he should simply have waited to file for relief. The debtor's assertion of future ability to pay is certainly a factor to consider. For some debtors, however, the press of creditors, and the resulting stress, would likely make waiting intolerable. See, e.g., In re Molina, 420 B.R. at 829 (noting the debtor's "sincer[ity] in seeking chapter 13 relief since stopping the garnishment and preserving her home and income for herself and her grandson are critical for her"). In Hamilton v. Lanning, 130 S. Ct. 2464, 177 L. Ed. 2d 23, (2010), [**24] the Supreme Court quoted a Chapter 13 treatise in noting the urgency of some bankruptcy filings:

> "Potential Chapter 13 debtors typically find a lawyer's office when they are one step from financial Armageddon: There is a foreclosure sale of the debtor's home the

next day; the debtor's only car was mysteriously repossessed in the dark of last night; a garnishment has reduced the debtor's take home pay below the ordinary requirements of food and rent. Instantaneous relief is expected, if not necessary."

Id. at 2476 (quoting K. Lundin & W. Brown, Chapter 13 Bankruptcy § 3.1[2] (4th ed. 2009)); see also The Affordability Paradox, 52 Wm. & Mary L. Rev. at 1938 ("Every month a debtor spends saving up for an increasingly expensive bankruptcy lawyer is a month in which she has lost substantive bankruptcy rights for procedural reasons.").

It may turn out that balanced assessments will, in fact, result in designating a relatively small number of fee-only plans as filed in good faith. Such plans may be flawed by circumstances beyond the fact that they propose payment of only attorney's fees, or fees and a minimal amount of secured debt. In re Buck, for example, the bankruptcy court expressed [**25] concern about the unrealistic budgets underlying the plans. 432 B.R. at 21. Similarly, in In re Paley, 390 B.R. 53 (Bankr. N.D.N.Y. 2008), the two debtors proposed plans of limited duration despite the longer commitment expected under Chapter 13. Id. at 59 ("A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code."); see also In re Arlen, 461 B.R. 550, 555-56 (Bankr. W.D. Mo. 2011) (noting that the court's finding that the proposed plans were not in good faith was linked "to the failure of the Debtors' plans to comply with the applicable commitment period"); In re Lavilla, 425 B.R. 572, 578 (Bankr. E.D. Cal. 2010) (noting that the Paley court "had little difficulty finding that the debtors, who had the ability but not the intent to fund a meaningful chapter 13 plan, were not acting in good faith" because "[t]he brevity of their plans indicated that they were merely disguised chapter 7's"). Yet the National Association of Consumer Bankruptcy Attorneys, as amicus, asserts that its members "have routinely had fee-only plans confirmed," indicating that many such plans would satisfy the good-faith [**26] requirement if not rejected solely based on their fee-only characteristic.

In sum, in declining to fully join my colleagues' approach, I do not question the need for caution in evaluating fee-only Chapter 13 plans. My concern is that

674 F.3d 78, *87; 2012 U.S. App. LEXIS 6037, **26;
Bankr. L. Rep. (CCH) P82,196

a circumscribed totality of the circumstances analysis will unnecessarily, and perhaps unfairly, tilt the analysis against well meaning debtors. The experience thus far suggests that bankruptcy courts are able to draw distinctions between fee-only plans that comply with the Bankruptcy Code, including the good-faith requirement, and those that do not. Hence, unless further experience shows otherwise, I think we can be confident that the goals of Chapter 13 will be amply protected when the totality [*88] of the circumstances test is thoughtfully applied, without threshold limitation, by bankruptcy judges.

**<u>EXHIBIT B - ORDER OF REMAND BY THE</u>**

**<u>U.S. DISTRICT COURT FOR THE DISTRICT</u>**

**<u>OF MASSACHUSETTS, WESTERN DIVISION</u>**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
-----------------------------
In Re                        )
WAYNE ERIC PUFFER,           )    Ch. 13 No. 08-30290-HJB
         Debtor              )
-----------------------------
L. JED BERLINER, ESQ.,       )
         Appellant           )
                             )
              v.             )    C.A. No. 10-cv-30225-MAP
                             )
DENISE M.                    )
PAPPALARDO, ESQ.,            )
         Appellee            )
-----------------------------
```

ORDER OF REMAND

April 25, 2012

PONSOR, U.S.D.J.

On March 22, 2012, the United States Court of Appeals
for the First Circuit issued its Judgment reversing the
prior decision of this court and ordering that the matter be
remanded to the District Court with instructions to vacate
the Bankruptcy Court's fee order and remand it to that court
for further proceedings consistent with the First Circuit's
opinion.

On April 23, 2012, the Mandate in this case issued.
Based on this, this court hereby VACATES the Bankruptcy
Court's Fee Order.  This case is hereby REMANDED to the
Bankruptcy Court for further proceedings consistent with the
First Circuit's opinion.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge

## EXHIBIT C - BANKRUPTCY COURT'S ORDER

## AFFIRMING AFTER REMAND



2 of 5 DOCUMENTS

**In re: WAYNE ERIC PUFFER, Debtor.**

**Chapter 7, Case No. 08-30290**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS, WESTERN DIVISION**

**2012 Bankr. LEXIS 4498**

**September 27, 2012, Decided
September 27, 2012, Filed, Entered**

**COUNSEL:** [*1] For Wayne Eric Puffer, Debtor: L. Jed Berliner, BerlinerLaw, Springfield, MA.

For Richard King, Assistant U.S. Trustee: Stephen E. Meunier, Department of Justice, U.S. Trustee's Office, Worcester, MA.

Trustee: Gary M. Weiner, Weiner & Lange, P.C., Springfield, MA.

**JUDGES:** Henry J. Boroff, United States Bankruptcy Judge.

**OPINION BY:** Henry J. Boroff

**OPINION**

**MEMORANDUM OF DECISION**

The "Application of L. Jed Berliner for Approval of Compensation and Expenses as Counsel to the Debtor" (the "Fee Application") returns to this Court on remand from the United States District Court for the District of Massachusetts to consider whether "special circumstances" existed in the bankruptcy case of Wayne Eric Puffer (the "Debtor") to justify the filing of a fee-only Chapter 13 plan. [1] This Court finds none.

1   The First Circuit Court of Appeals has used this term to refer to a Chapter 13 plan which "pays the debtor's lawyer and the trustee their professional fees but leaves the general creditors holding an empty (or nearly empty) bag." In re Puffer, 674 F.3d 78, 81 (1st Cir. 2012). Because of both the strictures of *stare decisis* and the aptness of this definition, this Court will use the term in the same way.

I. FACTS AND TRAVEL OF THE [*2] CASE

With the benefit of an evidentiary hearing at which the Debtor and attorney L. Jed Berliner ("Attorney Berliner") testified [2] and the Debtor's affidavit, dated October 22, 2009 (the "Affidavit"), the following are the Court's findings of fact, pursuant to Bankruptcy Rule 7052 [3] , as made applicable to this contested matter pursuant to Bankruptcy Rule 9014.

2   Upon remand to this Court, Attorney Berliner was offered and he accepted the opportunity to present new evidence that might inform the Court's determination.
3   All references to the "Bankruptcy Code" or to Code sections are to the Bankruptcy Code unless otherwise specified, 11 U.S.C. §§ 101 et seq.; all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

Sometime in 2006, the Debtor recognized himself to be in financial difficulty. He was then receiving what he considered to be harassing telephone calls and letters from creditors attempting to collect on approximately $15,000 of unsecured debt. He decided to explore bankruptcy as a remedy. The Debtor searched on the internet for available attorneys in the area, but claims that he could find no one other than Attorney Berliner willing to file a bankruptcy [*3] case for the money which the Debtor had available. [4]

> 4   Since the Debtor also testified that he met with no other attorneys before or after meeting with Attorney Berliner, the Debtor apparently reached this conclusion solely or primarily as a result of telephone inquiries with potential candidates for his representation.

On or around January 11, 2007, the Debtor met with Attorney Berliner (the "January 2007 meeting"). At that meeting, the Debtor described his financial situation to Attorney Berliner: The Debtor was then approximately 32-years-old and living with his girlfriend, their 3-year-old son and his girlfriend's two daughters. He owed approximately $15,000 in unsecured debt. A truck and some tools were his only meaningful assets. The Debtor held two jobs--one as a service technician for a local car dealership and one as a part-time banquet server. His average gross monthly income at that time was $2,355.38; his net income, $2,083.88; and his average monthly expenses $1,983.88. According to the Affidavit, those income figures included an anticipated tax refund which he pro-rated as $158.50 per month.

Attorney Berliner recommended that the Debtor file a bankruptcy case under Chapter [*4] 7 of the Bankruptcy Code and quoted his fee for that work. The Debtor deemed that sum to be more than he could accommodate, and Attorney Berliner was not then retained. The Debtor testified that he did not ask Attorney Berliner at the January 2007 meeting if Attorney Berliner would represent him at a reduced fee, if Attorney Berliner knew of any other attorneys in the area who could be of assistance to him in filing a Chapter 7 at lower cost, if there were any legal services agencies that might be of assistance, or if he could file a Chapter 7 case without the benefit of counsel. And Attorney Berliner suggested no such alternatives to him.

Soon after the January 2007 meeting, the Debtor's truck was repossessed. That development prompted the Debtor to again contact Attorney Berliner. Sometime between late March and early April of 2007, the Debtor visited with Attorney Berliner for a second time. It was at that meeting that Attorney Berliner presented the Debtor with the option of filing under Chapter 13 as an alternative to Chapter 7. A Chapter 7, Attorney Berliner explained, would necessitate payment in advance of $2,250.00, including costs and services necessary to redeem the lost [*5] truck. However, if the Debtor filed under Chapter 13, he would be able to afford Attorney Berliner's fees estimated at $3,000, plus $1,100 in costs. The Debtor could pay him only a $500 retainer upfront and then $100 per month over the life of a Chapter 13 plan until the balance was paid. That sealed the bargain, and on April 13, 2007, the Debtor retained Attorney Berliner, paying him the $500 retainer (made predominantly with borrowed funds). [5]

> 5   The Debtor testified that as of the date of the instant evidentiary hearing, he had still not paid back the borrowed funds.

On February 29, 2008--about ten months after Attorney Berliner's retention--the Debtor filed a Chapter 13 petition with this Court. [6] The Debtor's Schedule A--Real Property, revealed no ownership interests in any real property. In his Schedule B--Personal Property, the Debtor listed assets with a total value of $4,449.49-- a 1985 BMW Sedan valued at $1,000 and tools and a toolbox valued at $1,200, with the remaining items of *de minimis* or uncertain value. [7] In the Debtor's Schedule C--Property Claimed as Exempt, he claimed as exempt the full value of all of these assets. In Schedule D--Creditors Holding Secured Claims, the Debtor [*6] listed no creditors. Similarly, no creditors were listed in Schedule E--Creditors Holding Unsecured Priority Claims. In Schedule F--Creditors Holding Unsecured Nonpriority Claims, the Debtor listed a total of $14,836.20 in unsecured debt, most on account of credit cards and personal loans. In Schedule I--Current Income, the Debtor represented his gross monthly income to be $2,083.88; and in Schedule J--Expenses, he represented his total monthly expenses to be $1,983.88, leaving the Debtor with exactly the monthly amount necessary to make payments under the plan, almost all of the benefit of which would subsequently be remitted to Attorney Berliner. The 36-month plan proposed monthly payments of $100 (the "Plan") which would pay over time the $2,949 stated balance of Attorney Berliner's fees and costs, a total payment of $300 to unsecured creditors (or

2% of the unsecured claims) and the commission of the Chapter 13 trustee.

6   The Debtor attributed the delay to his difficulty accumulating the information necessary to file the bankruptcy case because he and his girlfriend had by then separated and his girlfriend had much of the information he required.

7   Certain tax refunds and a claim against [*7] GMAC were listed with an "undetermined" value.

A hearing was held on July 23, 2009 to address the propriety of the Debtor's "fee-only" Plan. At the conclusion of that hearing, this Court took the matter under advisement allowing the Trustee and Attorney Berliner further opportunity to brief the issue. Attached to his "Brief Supporting Confirmation of the Chapter 13 Plan," Attorney Berliner included the Affidavit, which, *inter alia*, stated the Debtor's monthly net income then to be $1,299.99. 8  On July 9, 2010, this Court issued an Order denying confirmation of the Plan on the grounds that both the Plan and the case itself were not filed in good faith. Accordingly, this Court ordered the Debtor to file either an amended Chapter 13 plan or a motion to convert the case to Chapter 7, or else have the case dismissed. This Court additionally ordered Attorney Berliner to file an application for approval of his fees and costs relating to the Debtor's case.

8   The Debtor did not file amended Schedules I or J prior to or after the filing of the Proposed Confirmation Order to account for the $783.89 decrease in his monthly income.

On August 8, 2010, the Debtor filed a Notice of Voluntary Conversion [*8] to Chapter 7. And on September 3, 2010, Attorney Berliner filed his Fee Application requesting that this Court approve $2,872 in fees and expenses. This Court allowed the Fee Application, but only in the amount of $299, citing its reasoning in the case of In re Buck, 432 B.R. 13 (Bankr. D. Mass. 2010) (the "Fee Order") which, not so coincidentally, also involved fee requests by Attorney Berliner with respect to two related fee-only Chapter 13 plans. Attorney Berliner appealed the Fee Order to the United States District Court for the District of Massachusetts (the "District Court"). On July 8, 2011, the District Court affirmed the Fee Order. See In re Puffer, 453 B.R. 14 (D. Mass. 2011). Attorney Berliner appealed further to the First Circuit Court of Appeals (the "First Circuit").

On March 22, 2012, the First Circuit reversed the District Court's affirmance of the Fee Order, holding that "[w]hile fee-only plans should not be used as a matter of course, there may be special circumstances, albeit relatively rare, in which this type of odd arrangement is justified." In re Puffer, 674 F.3d 78, 83 (1st Cir. 2012). Accordingly, the First Circuit remanded the matter to the District Court with [*9] instructions to vacate the Fee Order itself and remand back to this Court for further proceedings to consider whether such "special circumstances" existed in the Debtor's case. Id. at 84.

On June 28, 2012, at Attorney Berliner's request, this Court held an evidentiary hearing on the Fee Application (the "Evidentiary Hearing"). Two exhibits were entered into evidence and two witnesses (Attorney Berliner and the Debtor) presented testimony. At the conclusion of the hearing, this Court took the matter under advisement and offered the parties an opportunity to submit further briefs or arguments. Both Attorney Berliner and the Trustee declined. A week later, Attorney Berliner changed his mind, and filed a "Motion to File Supplemental Statement," which provided arguments on four issues he felt relevant to this Court's decision. 9  The Trustee filed an Opposition. The Court allowed the Supplemental Statement, but only insofar as it provided legal arguments and reasoning based on facts proven at the Evidentiary Hearing, and granted the Trustee an opportunity to respond. The Trustee did so.

9   Attorney Berliner filed a "Further Supplemental Statement" on August 20, 2012 calling this Court's attention [*10] to the recent decision of the Fifth Circuit Court of Appeals in Sikes v. Crager (In re Crager), wherein the Fifth Circuit applied Louisiana's presumptive no-look fee to fee-only Chapter 13 cases. 2012 U.S. App. LEXIS 17244 (5th Cir. Aug. 16, 2012); 2012 WL 3518473 (5th Cir. Aug. 16, 2012). The case is obviously of interest; however, this Court respectfully disagrees with its conclusions, as have many other courts. See In re Buck, 432 B.R. at 22 n.14 (collecting cases). More importantly, this Court is bound only by the decisions of the First Circuit and its most recent rulings on the issue. See In re Puffer, 674 F.3d 78.

II. POSITIONS OF THE PARTIES

Attorney Berliner asserts several special circumstances to justify the Debtor's fee-only Chapter 13

Plan: (1) the harassing phone calls and letters the Debtor was receiving from creditors at his home and at his place of employment; (2) the subjective stress which the Debtor claimed to be suffering as a result of those phone calls and letters; (3) the tension between the Debtor's Schedules I and J and the Affidavit; (4) the lack of a standard in Massachusetts at the time of filing with respect to fee-only Chapter 13 plans; (5) Attorney Berliner's [*11] hope that the Court would accept a standard with respect to fee-only Chapter 13 plans; (6) the costs which Attorney Berliner has incurred as a result of his appeal of the Fee Order; and (7) the standards established pursuant to the First Circuit's remand.

The Trustee denies that any special circumstances justified filing the Debtor's fee-only Plan. First, the Trustee argues that the Debtor failed to establish that he had a pressing need for Attorney Berliner's services. The Trustee points to the Debtor's assets at the time of filing, which totaled only a little over $2,000, his earnings--some $2,000 a month--and the fact that he was then living with his parents. Second, the Trustee doubts the Debtor's inability to secure adequate representation without resorting to a fee-only plan. The Trustee emphasizes the possible alternatives that were available to the Debtor (e.g., a reduced fee arrangement; the availability of legal assistance from others at a reduced fee; or a Chapter 7 case filing without the benefit of counsel), none of which he and Attorney Berliner even explored. Third, the Trustee submits that it was not in fact infeasible for the Debtor under these circumstances to have filed [*12] without the benefit of counsel.

## III. DISCUSSION

### A. The Good Faith Requirement

The Debtor's good faith is a requirement that permeates the Bankruptcy Code and in particular, the confirmation of a Chapter 13 plan. Section 1325(a)(3) instructs the Court to confirm a plan if "... the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Section 1325(a)(7) requires the Court additionally to find that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7). Despite the Code's emphasis that it be present, neither § 1325(a) nor any other provision of the Code defines "good faith."

The First Circuit has adopted "a totality of circumstances approach to adjudicating good faith ...

inquiries under section 1325." In re Puffer, 674 F.3d at 82. This approach requires a court to engage in something comparable to a "holistic balancing of relevant factors" when determining the presence or absence of good faith. Id. "[R]eluctant to read per se limitations into section 1325's good faith calculus," the First Circuit found that a fee-only Chapter 13 plan standing alone cannot constitute bad faith. Id. That holding, however, was [*13] not an invitation for debtors to file fee-only plans as a "matter of course." Puffer, 674 F.3d at 83. Rather, in the First Circuit's view, only upon a showing of "special circumstances" in "relatively rare" instances would a fee-only plan meet the Code's good faith requirement. Id. Accordingly, this Court must examine whether "special circumstances" existed in this Debtor's case to justify Attorney Berliner's recommendation that the Debtor file a Chapter 13 case with a fee-only plan.

### i. Special Circumstances

The Debtor "carries a heavy burden of demonstrating special circumstances that justify [his] submission" of a fee-only plan. Puffer, 674 F.3d at 83. And while the First Circuit has left undefined those "special circumstances" that might justify such a plan, it did make clear that they exist only in "relatively rare" instances. Id.

There can be no exhaustive definition of the term "special circumstances," and that is perhaps the theme of the First Circuit's Puffer decision; i.e., that a court of equity should be loath to employ the word "never," expressly or impliedly. Yet the First Circuit majority went to considerable lengths to emphasize that the circumstances which would justify [*14] a fee-only Chapter 13 plan should be far from the norm, indeed "rare."

This Debtor's case presents no such "special" circumstances. At the time the Debtor filed his Chapter 13 case he was approximately 32-years-old, single and in good health. He was employed, but claimed to have had disposable income of only $100 per month. [10] The Debtor did not own a home; he lived with his parents. His significant assets were a car and some tools -- a total value of approximately $2,200. The Debtor's only debts were unsecured and totaled approximately $15,000.00. The Debtor paid Attorney Berliner a $500 retainer comprised of borrowed funds and then waited 10 months to file the case; and the plan that resulted would have paid the balance of Attorney Berliner's fees and expenses in full, and not much else.

10    This figure appears itself to be fantastical. The Debtor's Schedule J--Current Expenditures of Individual Debtor(s), included no sum for the Debtor's medical or dental expenses or health insurance. Furthermore, according to the Affidavit and Schedule J, the Debtor's professed income included a proration of expected tax refunds. But tax refunds appear only once per year. In the meantime, the Debtor  [*15] would be short on a cash basis by $158.50 per month.

The Court does not make light of the Debtor's mindset when he met with Attorney Berliner that day in January 2007 or again after the repossession of his vehicle. Harassing phone calls and letters from creditors are undoubtedly frightening and stressful and the loss of a cherished or necessary asset by a person of limited means is obviously quite painful; but unfortunately, these circumstances are quite common among those who require bankruptcy relief. And while the effect of that stress may have been significant, as it is for almost all debtors, it was apparently not so overwhelming for this debtor as to cause him to expedite his efforts to get the Chapter 13 case filed. The Debtor tolerated a 10-month delay in seeking the respite which is now claimed to have been so desperately required.

**B. The Fee Application**

Section 330 of the Code iterates the general standards in a Chapter 13 case by which the Court

> may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor.

§ 330(a)(4)(B).  [*16] In making this determination, the Court must consider

> the nature, the extent, and the value of such services, taking into account all relevant factors, including--

> (A) the time spent on such services;

> (B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). Courts in this Circuit employ the lodestar method when deciding the reasonableness of an attorney's fee application. See In re Buck, 432 B.R. at 23; Lopez v. Consejo de Titulares del Condominio Carolina (In re Lopez), 405 B.R. 24, 30 (1st Cir. BAP 2009). In In re Lopez,  [*17] the First Circuit BAP explained how the lodestar method works:

> The lodestar method entails multiplying the number of hours productively spent by a reasonable hourly rate. In determining the number of hours productively spent, courts should eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Courts determine reasonable hourly rates based

on the nature of the work, the locality where it was performed, the lawyer's qualifications, and other pertinent criteria.

405 B.R. at 30 (internal citations omitted). However, the court's calculations do not end there. "After calculating the lodestar amount, the court may adjust it, up or down, in light of other considerations, such as the results obtained." Id. (citations omitted). Indeed, the Court may "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

But the issue here is not so much the time and effort expended by Attorney Berliner, as is the propriety of his recommendation that this debtor file a Chapter 13 case. [11] And even if the lodestar methodology had relevance, the First Circuit has recently noted:

> [T]he lodestar method, which is designed to 'provide[ [*18] ] a flexible paradigm [is] not meant to bind the *nisi prius* court to any single way of calculating the number of hours reasonably expended.' Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 526[#x20d]27 (1st Cir. 1991) (quoting United States v. Metro. Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988)). Given the nature of this paradigm, a bankruptcy court need not march mechanically through a checklist of the section 330 factors when fashioning a fee award. See Metro. Dist. Comm'n, 847 F.2d at 15 (warning that mechanical approaches to fee awards 'sacrifice substance on the altar of form'); see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 308 (1st Cir. 1995) (stating that lodestar method should not 'be applied in a formulaic or mechanical fashion' (internal quotation marks omitted)). Rather, it suffices if the court makes a fee calculation that takes the section 330 factors fairly into account.

In re Sullivan, 674 F.3d 65, 69 (1st Cir. 2012).

[11]   As applied to the propriety of fee-only plans, the District Court explained that

[where] the issue before [the Court is] the propriety of the Chapter 13 selection in the first place and the ultimate 'fee [*19] only' plan, the typical lodestar mathematics [has] little relevance to [the Court's] analysis.

In re Puffer, 453 B.R. at 19. Nothing in the First Circuit's reversal indicates a rejection of that reasoning.

Having found no special circumstances to justify the filing of the Debtor's Chapter 13 case and fee-only plan, the Court similarly cannot find the requested fees associated with such a case are justified in any amount. The Debtor, notwithstanding what he might have been advised to the contrary, was in fact prejudiced by the Chapter 13 filing. Had the Debtor filed under Chapter 7, he likely would have received a discharge of his debts in mid to late 2008. But, because of the failed attempt to consummate a Chapter 13 plan and the subsequent conversion of the case to Chapter 7, he did not receive his discharge until March of 2011--over 2 1/2 years later. And, even if Chapter 13 had been an appropriate alternative to Chapter 7, the Plan would--to the objective observer--have been doomed from the outset: the monthly surplus was thin (if not illusory), the monthly cash available overstated and the monthly expenses not fully accounted for. When the Chapter 13 case inevitably failed, the Debtor [*20] might then have converted the case to Chapter 7, but again at the cost of a delay in his Chapter 7 discharge. According to the testimony at the Evidentiary Hearing, the Debtor was not advised that a reduced fee might be obtained from another attorney, that he should consider seeking free or reduced fee services from agencies which (notwithstanding the strain of recent budget cuts) might be able to help him or that in this uncomplicated case, filing without an attorney was a possibility.

Instead, from the only attorney he thought was available to help him, the Debtor was quoted a fee nearly exceeding the total value of his assets and advised to employ a methodology not only untested, but well designed to ensure that when the plan failed, Attorney Berliner would receive most if not all of his fees. Such a Chapter 13 was not so much a remedy for the Debtor as it was a fee enhancement and collection device for Attorney Berliner, similar to that used by Attorney Berliner in the

cases of In re Buck (Docket No. 08-43918) and In re Groccia (Docket No. 08-43919) as reported by this Court in its decision In re Buck, 432 B.R. 13. [12] As was true in the Buck and Groccia cases, any award of compensation [*21] to Attorney Berliner in this case would do nothing but encourage and reward conduct that the Court deems wholly inappropriate.

> 12   This Court's orders disallowing Attorney Berliner's compensation in the Buck and Groccia cases have been appealed to and are currently pending in the District Court.

Finally, Attorney Berliner makes two more arguments. First, he says that he has been prejudiced by the previous lack of a standard in this judicial district and Circuit with respect to fee-only Chapter 13 plans. To this, the Court responds that it should have been apparent, as a matter of common sense, that in the absence of at least exigent circumstances, a court of equity would likely not permit an attorney to take advantage of a debtor by putting him or her into a bankruptcy case both inappropriate from a strategic perspective (inter alia, in light of the discharge delay) and in which the debtor could not possibly succeed. No announcement of such a standard by this Court, by the District Court or by the First Circuit should have been necessary.

Second, Attorney Berliner complains that he is entitled to compensation for his appellate effort which resulted in the setting of a standard for fee-only [*22] plans and remand to this Court. While Attorney Berliner may have succeeded in causing the First Circuit to announce that fee-only Chapter 13 plans are permitted only in special and rare circumstances, he was totally unable to demonstrate those circumstances in the same case once remanded. There were no special circumstances to justify a fee-only Chapter 13 plan in this case; indeed, even were it otherwise, the plan was not feasible from the outset and that should have been obvious to him.

Where a debtor's lack of good faith in filing a bankruptcy case under any chapter stems primarily from poor advice given by the debtor's attorney, the obstacle to compensation for that attorney on account of the attendant services is, and should be, virtually insurmountable. As this Court has previously noted in a different context: "Clients come to attorneys for a service. Where the service is not provided, or provided poorly, they should not be required to pay for the service...." In re Lafrance, 311 B.R. 1, 25 (Bankr. D. Mass. 2004).

IV. CONCLUSION

The Court will again allow the Fee Application only in the amount of $299.00--the amount of the Chapter 7 filing fee in 2007. 11 U.S.C. § 330(a)(2). The [*23] balance of the request will be disallowed. Attorney Berliner will be ordered to remit the balance of his $500.00 retainer ($201.00) to the Chapter 13 trustee, who will then forward same to the Debtor, together with funds which she is holding on his behalf, pursuant to § 1326(a)(2).

An order in conformance with this Memorandum of Decision shall be entered forthwith.

DATE: September 27, 2012

By the Court,

/s/ Henry J. Boroff

Henry J. Boroff

United States Bankruptcy Judge

## EXHIBIT D - MOTION FOR STAY PENDING APPEAL

## FILED IN THE BANKRUPTCY COURT

### United States Bankruptcy Court
### For the District of Massachusetts
### Western Division

In re

**Eric Wayne Puffer**

     Debtor

Case No. **08-30290**

Chapter **7**

### MOTION FOR STAY PENDING APPEAL;

### REQUEST FOR EXPEDITED DETERMINATION

L. Jed Berliner, Esquire, debtor's counsel and the proposed appellant of the Court's September 27, 2012 Order denying his fees, requests a stay of said Order pending his appeal therefrom.  In support thereof, counsel states:

1.     The debtor, with the assistance of counsel, filed a fee-only Chapter 13 case and proposed plan on February 29, 2008.

2.     The Court denied confirmation of the plan on July 9, 2010 with reference to *In re Groccia*, 432 B.R. 13 (Bankr. D. Mass.).  The same order required counsel to file a fee application.

3.     Counsel then converted the case to one under Chapter 7.  The alternative of preserving the direct fee-only plan issue for an appeal, under First Circuit precedent, would have required confirmation of a new plan and then the appeal of the denial

if leave for an interlocutory appeal was denied.  In either event, significant time had

passed and the debtor would have been ill-served by further delay.


4.     After extension, the fee application was timely filed on September 3, 2010.


5.     On October 14, 2010, the Court denied the fee application.


6.     Counsel notes that the Court issued a stay pending appeal in the related *Groccia*

and *Buck* cases which raise the similar fee-only plan issues, and that the Court


7.     Counsel believes that there is a reasonable likelihood of a finding of special

circumstances for the approval of this fee-only Chapter 13 filing, based on:


(a) The harassing phone calls.


(b) The undefined threatened creditor actions.


(c) The fear of a lawsuit and its related stress.


(d) The total inability of the debtor to ever save up for a Chapter 7 filing.


(e) The absence of any proof of an available lower-fee attorney.

(f) The suggestion of the absence of a *pro bono* alternative.

(g) The satisfied client who got what he contracted for.

(h) The delay from retainer to filing being mostly due to the debtor's actions and inactions.

(i) The suggestion that this *post facto* development should retroactively void the original representation agreement.

(j) The absence of any basis to suggest that the debtor could have successfully filed and achieved a discharge *pro se* (counsel's Motion to File Supplement Statement at Page 7 cited to a study demonstrating a 414% increase in dismissed *pro se* Chapter 7 filings when compared with filings by represented debtors).

8.      At its heart, this dispute is over a fee application.   Even without special circumstances justifying a fee-only Chapter 13 filing, counsel believes that there is a reasonable likelihood of success on a ruling that his $2,574.00 fee request is reasonable under all the circumstances.

(a) The complete denial of all compensation for services is contrary to B.R. 9011(b)(2), which permits  arguments for the extension of existing law or the establishment of new law. Arguing for a fee-only plan, permitted by other

jurisdictions, was a good faith effort for which complete denial of compensation is incorrect and chills the bar from presenting novel arguments accepted elsewhere. It was an important issue worthy of appellate review.

(b) There was no known standard in the Circuit, and there were favorable standards set in the four other Districts of Kansas and the Western, Central, and Eastern Districts of North Carolina. When the case was filed. The Fifth Circuit has since joined in approving fee-only filings.  It has been ruled elsewhere that an attorney must not be punished for arguing for a proposition that is approved elsewhere, even if not successful for arguing the proposition itself. The chilling effect of the punishment of the total denial of all fees for this attempt, again approved elsewhere, is contrary to American jurisprudence.

(c) The requested $2,574.00 is extremely modest when compared to the usual fees of any appeal, and the appeal was successful. The standard applied by this Court was reversed. Under precisely these circumstances, the Fifth Circuit approved debtor's counsel's fees.

(d) The Court may have misapplied the district court's reasoning in denying application of the loadstar analysis. The district court assumed that the Court's *pre se* prohibition was a correct legal standard. The Circuit reversed on this point, leaving the loadstar in place as determinative of counsel's fees for the successful appeal.

(e) The Court may have erroneously assumed that the debtor could have somehow achieved a successful Chapter 7 discharge earlier than the one finally entered. The debtor still has not repaid the $500.00 costs advanced at the outset of the representation.  His Chapter 13 payments might have added up to a lower-fee Chapter 7 attorney perhaps six months earlier at best, if one was available. He made all required Chapter 13 payments, disproving the Court's suggestion that is modest monthly surplus was possibly illusory or inaccurately stated. The Court assumes facts not in evidence as to the availability of a free or lower-fee Chapter 7 attorney or agency and disregards the risk of losing assets in a *pro se* Chapter 7 filing even if the discharge was achieved despite the 414% increase in dismissed Chapter 7 filings when compared to represented debtors.

(f) The Court may have erroneously suggested that counsel should have ignored "as a matter of common sense" the existence of established precedent elsewhere (Kansas, Western and Central and Eastern North Carolina).

(g) The Court may have erroneously ignored the impact of the concurring First Circuit opinion, with its lesser standard without "special circumstances", as applicable to the reasonableness of his requested fees.

9.     The issues have been briefed on appeal for the *Groccia* and *Buck* cases where, again, this Court allowed a stay pending appeal.  Allowing a stay pending appeal here would not create significantly additional burdens on any party.

Debtor's counsel

/s/ L.  Jed Berliner, Esquire
L. Jed Berliner, Esquire, BBO 039950
Berliner Law Firm
95 State Street, Suite 1010
Springfield, MA  01103-2081
telephone:  (413) 788-9877
facsimile:  (413) 746-9877
email:  jed@berlinerlaw.com

## Certificate of Service

The undersigned certifies that this Notice of Appeal was filed with the Court in a manner appropriate for automated service of true electronic images to all ECF Registrants in this Case or Proceeding, including the Chapter 7 Trustee and the U.S. Trustee, at their registered electronic addresses, plus the Standing Chapter 13 Trustee at her stated electronic address and the debtor by first class mail, with postage prepaid and return address provided.


Date:  October 11, 2012                    /s/ Jed Berliner
                                           L. Jed Berliner

**EXHIBIT E - BANKRUPTCY COURT'S DENIAL OF**

**MOTION FOR STAY PENDING APPEAL**



1 of 1 DOCUMENT

**In re: WAYNE ERIC PUFFER, Debtor**

**Chapter 7, Case No. 08-30290-HJB**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS, WESTERN DIVISION**

**2012 Bankr. LEXIS 5018**

**October 25, 2012, Decided**
**October 25, 2012, Filed, Entered**

**COUNSEL:** [*1] For Wayne Eric Puffer, Debtor: L. Jed Berliner, BerlinerLaw, Springfield, MA.

For Richard King, Assistant U.S. Trustee: Stephen E. Meunier, Department of Justice, U.S. Trustee's Office, Worcester, MA.

**JUDGES:** Henry J. Boroff, United States Bankruptcy Judge.

**OPINION BY:** Henry J. Boroff

**OPINION**

<u>**ORDER DENYING STAY PENDING APPEAL**</u>

Before the Court is a "Motion for Stay Pending Appeal" (the "Stay Motion") of this Court's September 27, 2012 Order (the "Order") on the "Application for Approval of Debtor's Counsel's Fees and Expenses" (the "Fee Application") filed by the Appellant, L. Jed Berliner ("Attorney Berliner"). By the said Order, issued upon remand from the United States District Court for the District of Massachusetts, this Court employed the standards elucidated by the First Circuit Court of Appeals in Berliner v. Pappalardo (In re Puffer), 674 F.3d 78 (1st Cir. 2012) and again allowed the Fee Application only in the amount of $299.00; ordered Attorney Berliner to remit the sum of $201.00 to the Chapter 13 trustee; and ordered the Chapter 13 trustee to remit any amounts held by her, to the Debtor. [1] Subsequent to the issuance of the Order, Attorney Berliner advised that he had previously remitted the sum of $201.00 [*2] directly to the Debtor and the Court deems that portion of its Order to be satisfied. The instant motion, therefore, seeks a stay of that portion of the Order which requires remittance by the Chapter 13 trustee of funds held by her to the Debtor - funds to which Attorney Berliner feels entitled.

1  Such remittance would be net of the commissions to which the Chapter 13 trustee is entitled.

The considerations to be employed by this Court in evaluating a motion for a stay pending appeal are well-settled:

[T]he factors regulating the issuance of a stay are [. . .]: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776-77, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987); Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13 (1st Cir. 2002). Nevertheless, '[t]he *sine qua non* [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits.' Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). In essence, the issuance [*3] of a stay depends on 'whether the harm caused [movant] without the [stay], in light of the [movant's] likelihood of eventual success on the merits, outweighs the harm the [stay] will cause [the non-moving party].' United Steelworkers of America v. Textron, Inc., 836 F.2d 6, 7 (1st Cir. 1987) (internal quotations omitted).

Acevedo-Garcia v. Vera-Monroig, 296 F.3d at 16-17.

For the reasons stated in this Court's Memorandum of Decision, dated September 27, 2012, accompanying the Order and incorporated herein by reference (Docket No. 122 in this case and as In re Puffer, 478 B.R. 101, 2012 Bankr. LEXIS 4498 (Bankr. D. Mass. 2012)), Attorney Berliner has utterly failed to elucidate any "special circumstances" whatsoever that would have justified the filing of a fee-only Chapter 13 plan or, for that matter, the filing of a Chapter 13 case. The existence

of such special circumstances has been explained by the First Circuit Court of Appeals to be necessary in order for a debtor to establish his or her good faith. In re Puffer, 674 F.3d at 83.

In light of Attorney Berliner's inability to show any special circumstances justifying the filing of a fee-only Chapter 13 plan and in light of this Court's finding that Attorney [*4] Berliner's recommendation that the Debtor file the instant Chapter 13 case was designed to benefit only him and was not in the Debtor's best interests, the Court finds and rules that Attorney Berliner has failed to demonstrate the existence of the first factor of the four required to obtain a stay pending appeal - whether the stay applicant has made a strong showing that he is likely to succeed on the merits. Accordingly, the Court need not address the existence of any of the other three factors. The Stay Motion is DENIED.

DATED: October 25, 2012

By the Court,

/s/ Henry J. Boroff

Henry J. Boroff

United States Bankruptcy Judge