Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 1 of 16

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-30190-RGS

IN RE WAYNE PUFFER

L. JED BERLINER

v.

DENISE PAPPALARDO,
CHAPTER 13 TRUSTEE

MEMORANDUM AND ORDER
ON APPEAL FROM THE BANKRUPTCY COURT'S ORDER
REGARDING FEES AND EXPENSES

May 6, 2013

STEARNS, D.J.

In this bankruptcy appeal, appellant Attorney L. Jed Berliner seeks to reverse a ruling of the Bankruptcy Court disallowing his claim for attorney's fees and expenses (other than the debtor's filing fee) in connection with his representation of debtor Wayne Eric Puffer. The court heard oral argument in Springfield, Massachusetts, on March 27, 2013.

FACTS AND TRAVEL OF THE CASE[1]

---

[1] The court assumes familiarity with the distinctions between Chapter 7 and Chapter 13 bankruptcy filings and the concept of fee-only Chapter 13 plans, which are described in detail in the prior decisions issued in this case. See 674 F.3d 78 (1st Cir. 2012); 453 B.R. 14 (D. Mass. 2011); 478 B.R. 101 (Bankr. D. Mass. 2012).

Sometime in 2006, Puffer found himself in financial straits. After a barrage of telephone calls and letters from creditors dunning him for payment of approximately $15,000 of unsecured debt, Puffer decided to seek advice on declaring bankruptcy. With this goal in mind, he met with Attorney Berliner in January of 2007.

At the initial consultation, Berliner recommended that Puffer file under Chapter 7 of the Bankruptcy Code and quoted his fees and the filing costs. Although according to Berliner, his fees were among the lowest offered by bankruptcy attorneys in the Springfield area, Puffer deemed the advance payment of $2,250 requested by Berliner to be more than he could then afford. Puffer did not ask if Berliner would represent him at a reduced fee, if Berliner knew of any other attorneys in the area who might offer a Chapter 7 filing at lower cost, or if there were any legal services agencies that might provide assistance – nor did Berliner suggest any such alternatives. Puffer looked for another attorney, but could find no one who was willing to take the work for the little money he had available. When asked by the Bankruptcy Court whether he had considered filing pro se, Puffer said that he "didn't know much about [bankruptcy] personally" and had "heard from the past that a couple people have pretty much filed for themselves and it did not go very well." Tr. at 26.[2]

---

[2] Transcript references are to the evidentiary hearing on Berliner's fee application held by the Bankruptcy Court on June 28, 2012.

2

When shortly after the January consultation Puffer's truck was repossessed, he again contacted Berliner. During a second meeting in March or early April of 2007, Berliner presented Puffer with the option of filing under Chapter 13 rather than Chapter 7. The Chapter 13 filing required only a $500 up-front retainer with monthly payments of as little as $100 per month over the thirty-six months of the plan. Viewing this alternative as not only financially feasible, but also as an option that would allow him to do things "the right way" by repaying his creditors at least something, Tr. at 19, Puffer retained Berliner on April 13, 2007. He paid Berliner's $500 retainer primarily with borrowed funds.

Following a ten-month delay, which Puffer attributed to difficulty obtaining missing documents from his by-then ex-girlfriend, Puffer filed a Chapter 13 petition on February 29, 2008. His filing listed a total of $14,836.20 in unsecured debt; a gross monthly income of $2,083.88, which included a proration of expected tax refunds; and total monthly expenses of $1,983.88, which did not include medical or dental costs or insurance. Puffer's assets totaled $4,449.49, and included a 1985 BMW sedan valued at $1,000, and tools and a toolbox valued at $1,200. The 36-month plan proposed monthly installments of $100, which would over time pay the $2,949 balance of Berliner's fee, provide a total of $300 for the unsecured creditors (or 2% of the unsecured claims), and pay the commission of the Chapter 13 Trustee.

A hearing to confirm the Chapter 13 plan was held before Bankruptcy Judge Henry J. Boroff on July 23, 2009. Together with a brief in support of confirmation, Berliner filed an affidavit in which Puffer declared his monthly net income to then be $1,299.99. Puffer did not, however, file amended schedules to explain the nearly $800 reduction in his monthly income from the time of his initial filing. Berliner later testified that he had not corrected the schedules because "Puffer's income and employment vary. And one could not know if he was going to get another job the week after." Tr. at 49. When asked by the Bankruptcy Judge how he had intended to fund the payment plan given the decline in his income, Puffer replied that he simply planned to "ma[k]e do" and "cut more expenses out of [his] life." Tr. at 33.³

On July 9, 2010, the Bankruptcy Court rejected Puffer's Chapter 13 plan on grounds that neither the petition nor the plan was submitted in good faith. In so concluding, the Bankruptcy Judge cited *In re Buck*, 432 B.R. 13, 21-22 (Bankr. D. Mass. 2010), which held that so-called fee-only Chapter 13 plans, which pay the fees of the debtor's lawyer and the trustee, but provide only minimal relief to unsecured creditors, constitute a *per se* violation of the Chapter 13 good faith filing requirement. *See* 11 U.S.C. § 1325(a)(3), (a)(7). After rejecting the proposed plan, the Court

---

³ The Trustee's payment receipts show that despite an occasional late payment, Puffer did in fact manage to make the required payments from March of 2008 through April of 2010.

4

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 5 of 16

ordered Puffer either to file an amended Chapter 13 plan, convert his case to Chapter 7, or withdraw the petition entirely. Puffer elected the second option and converted his case to Chapter 7 on August 8, 2010. He received a discharge of his scheduled debts in March of 2011.

In the interim, Berliner filed an application for $2,872 in fees and expenses stemming from his representation of Puffer in the Chapter 13 proceedings. The Bankruptcy Court allowed the fee application, but only in the amount of $299 – the cost of filing the Chapter 7 petition. Because Berliner had already received a $500 retainer, the court's order in effect required him to disgorge $201. The Bankruptcy Court based its order on the proposition that an attorney is not entitled to recover professional fees for time spent preparing a Chapter 13 plan that he knows or has reason to know is being submitted in bad faith. On a first-level appeal, the district court affirmed the fee decision. *In re Puffer*, 453 B.R. 14, 22 (D. Mass. 2011).

The First Circuit reversed. Although the Court of Appeals shared the Bankruptcy Court's concerns that fee-only Chapter 13 plans "leave the vast majority of debts unsatisfied" and "may be vulnerable to abuse by attorneys seeking to advance their own interests without due regard for the interests of debtors," the Court declined "to read *per se* limitations into section 1325's good faith analysis." *In re Puffer*, 674 F.3d 78, 82-83 (1st Cir. 2012). The Court held that "[w]hile fee-only

5

Case 3:12-cv-30190-RGS    Document 25    Filed 05/06/13    Page 6 of 16

plans should not be used as a matter of course, there may be special circumstances, albeit relatively rare, in which this type of odd arrangement is justified." *Id.* at 83. The Court remanded the case for further proceedings in the Bankruptcy Court to determine whether special circumstances justified the filing under Chapter 13 and Berliner's fee. *Id.* at 84.

Following an evidentiary hearing and further briefing, the Bankruptcy Court determined that no special circumstances existed. Based on this conclusion, the Court again allowed the fee application only in the amount of $299 and ordered Berliner to remit the balance of his $500 retainer to the Chapter 13 Trustee. This timely appeal followed.

## DISCUSSION

Berliner challenges the denial of his fee application on two grounds. He argues that the Bankruptcy Court erred in concluding that no special circumstances justified the filing of a fee-only Chapter 13 petition in Puffer's case. The Bankruptcy Court then compounded this error by denying the motion for attorney's fees and costs. The court will address these contentions in turn. In doing so, the court reviews the Bankruptcy Court's legal conclusions de novo, its factual findings for clear error, and its calculation of the appropriate attorney's fee for abuse of discretion. *In re Puffer*, 674 F.3d at 81.

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 7 of 16

*Special Circumstances*

Berliner initially asserts that the facts of Puffer's situation "combine *in toto* to the required special circumstance[s]." Appellant Br. at 7. Among those facts, he lists the harassing telephone calls and letters Puffer endured from creditors; Puffer's inability to pay the up-front costs of a Chapter 7 filing; the absence of any proof of a lower-cost alternative; the mutual interests of the Bankruptcy Court and debtors in avoiding the pitfalls of pro se filings; and Puffer's stated satisfaction with Berliner's legal services. *Id.* at 7-8.

The First Circuit did not define any of the "special circumstances" that might justify a fee-only Chapter 13 plan. Instead, it emphasized that the presence or absence of good faith must be determined based on a case-by-case consideration of the totality of the circumstances. *See In re Puffer*, 674 F.3d at 82. But while it rejected the Bankruptcy Court's view that fee-only Chapter 13 plans amount to *per se* bad faith submissions, the Court took pains to note that its decision "should by no means be read as a paean to [such] plans." *Id.* at 83. Such plans, in the Court's estimation, would satisfy the good faith requirement only in "relatively rare" instances. *Id.* The Court cautioned that "[t]he dangers of [fee-only] plans are manifest, and a debtor who submits such a plan carries a heavy burden of demonstrating special circumstances that justify its submission." *Id.*

7

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 8 of 16

This court agrees with the Bankruptcy Court that Puffer has failed to shoulder the exceptional burden identified by the Court of Appeals. In reaching this conclusion, the court does not lack sympathy for the dilemma faced by a struggling debtor who cannot muster the payment of a Chapter 7 attorney's fee.[4] While it is always possible for the debtor to undertake self-representation, a debtor's aversion to navigating the complexities of the bankruptcy process on his own can hardly be gainsaid. This is especially so given the stringent Chapter 7 eligibility requirements imposed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which "subjected all filers to increased paperwork, stricter deadlines, new prerequisites such as credit counseling, and mandatory dismissals for myriad procedural mistakes." Angela Littwin, *The Affordability Paradox: How Consumer Bankruptcy's Greatest Weakness May Account for Its Surprising Success*, 52 WM. & MARY L. REV. 1933, 1936 (2011) (*The Affordability Paradox*) (footnotes omitted); *see also id.* at 1938 (noting that the results of an empirical study evidencing a "high pro se failure rate since 2005 suggest[] that it is reasonable to equate the inability to afford a lawyer with having less than full access to the bankruptcy system"). The

---

[4] Although he asserted in an earlier affidavit that he could have saved the funds necessary to hire Berliner for Chapter 7 representation if he had waited three months, Puffer testified at the hearing on remand that on further reflection this would have been impossible. Tr. at 20. That Puffer had to borrow the funds to pay Berliner's $500 retainer and was able to make monthly payments of only $100 under the Chapter 13 plan suggest that his earlier representation was indeed unrealistic.

8

BAPCPA, on the one hand, made informed legal advice all the more critical, while on the other, making it more costly to obtain. *See In re Puffer*, 674 F.3d at 84 (Lipez, J., concurring), citing *In re Beck*, No. 06-40774 (Bankr. D. Kan. Feb. 21, 2007), ECF No. 35, at *5 (referring to the "significantly increased burdens" placed on debtors' attorneys after BAPCPA); *The Affordability Paradox*, 52 WM. & MARY L. REV. at 1935-1937 (noting that the BAPCPA "made consumer bankruptcy more expensive for all debtors" and that "one of BAPCPA's major effects was a rise in the cost of representation"). Meanwhile, "[e]very month a debtor spends saving up for an increasingly expensive bankruptcy is a month in which she has lost substantive bankruptcy rights for procedural reasons." *The Affordability Paradox*, 52 WM. & MARY L. REV. at 1938.

Nevertheless, this court does not write on a blank slate, and if exceptions for special circumstances are to be "relatively rare," one here is not merited. Puffer has not demonstrated a compelling need for the immediate filing of a bankruptcy petition, such as the imminence of wage garnishment, repossession of an essential means of transportation, foreclosure of a home, or loss of access to basic care. *Cf. In re Crager*, 691 F.3d 671, 675-676 (5th Cir. 2012) (affirming the confirmation of a fee-only Chapter 13 plan as "a responsible decision given [the debtor's] particular circumstances" where saving for a Chapter 7 filing would have taken more than a

9

year and the debtor "had a legitimate fear that a future medical problem might leave her in a situation in which she had to take on more debt and might need to file another Chapter 13 petition"); *In re Molina*, 420 B.R. 825, 833 (Bankr. D.N.M. 2009) (confirming a fee-only Chapter 13 plan where the filing enabled the debtor, who was ineligible for Chapter 7 because of a previous filing, to save her home and end the garnishment of wages needed to care for herself and her grandson); *see generally* Br. for Nat'l Ass'n of Consumer Bankr. Attorneys as Amicus Curiae in Support of Appellant, *In re Puffer*, 674 F.3d 78 (1st Cir. 2012) (No. 11-1831), 2011 WL 6961709, at *12 (noting that where the immediate filing of a bankruptcy petition is necessary to preserve vital assets, debtors "will rarely, if ever, have the ability to save up for the attorney's fees necessary to file [C]hapter 7 without suffering adverse consequences"). Like the Bankruptcy Court, this court acknowledges that "[h]arassing phone calls and letters from creditors are undoubtedly frightening and stressful and the loss of a cherished or necessary asset by a person of limited means is obviously quite painful . . . ." *In re Puffer*, 478 B.R. 101, 107 (Bankr. D. Mass. 2012). As the Bankruptcy Court aptly observed, however,

> unfortunately, these circumstances are quite common among those who require bankruptcy relief. And while the effect of that stress may have been significant, as it is for almost all debtors, it was apparently not so overwhelming for this debtor as to cause him to expedite his efforts to get the Chapter 13 case filed. The Debtor tolerated a 10-month delay in seeking the respite which is now claimed to have been so desperately

10

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 11 of 16

required.

*Id.* at 107-108. On these facts, the Bankruptcy Court's finding of no special circumstances was not in error.

*Fee Application*

In the alternative, Berliner argues that even if the Bankruptcy Court correctly determined that special circumstances were absent, it nonetheless abused its discretion in disallowing the application for fees and costs. Berliner complains that the Bankruptcy Court engaged in "no analysis whatsoever" of his fee application and instead "sidestepped the application of the lodestar method in favor of punishing the appellant" for having brought the Chapter 13 petition. Appellant Br. at 9, 11. In this regard, Berliner places staunch reliance on cases (albeit few in number) in which other courts have approved fee-only Chapter 13 plans, arguing that he cannot be faulted for seeking to introduce a practice in this jurisdiction that has been accepted elsewhere.

Section 330 of the Bankruptcy Code authorizes the Bankruptcy Court to "allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor." 11 U.S.C. § 330(a)(4)(B). When deciding the reasonableness of a fee application, courts in this Circuit are to employ

11

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 12 of 16

the lodestar method. The lodestar method requires the multiplication of the hours productively spent by the attorney in preparing the case by a reasonable hourly rate. *In re Lopez*, 405 B.R. 24, 30 (B.A.P. 1st Cir. 2009). In determining the reasonableness of the number of hours spent, courts are directed to eliminate time "unreasonably, unnecessarily, or inefficiently devoted to the case." *Id.* (internal quotation marks and citation omitted).

The Bankruptcy Court concluded that because no special circumstances justified the filing in Puffer's case of a Chapter 13 fee-only plan, it "similarly [could not] find the requested fees associated with such a case are justified in any amount." *In re Puffer*, 478 B.R. at 109. Moreover, the Bankruptcy Court observed that had Puffer filed under Chapter 7, he would likely have received a discharge of his debts some two and a half years earlier than he did. It further reasoned that Puffer's Chapter 13 plan, which overstated his monthly income and failed to account fully for his expenses, was "doomed from the outset." *Id.* In sum, the Court concluded that Puffer's Chapter 13 plan "was not so much a remedy for the Debtor as it was a fee enhancement and collection device for Attorney Berliner." *Id.* In reaching this conclusion, the Court rejected Berliner's claim of good faith reliance on Chapter 13 fee-only approvals in other jurisdictions:

> [t]o this [claim], the Court responds that it should have been apparent, as a matter of common sense, that in the absence of at least exigent

12

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 13 of 16

> circumstances, a court of equity would likely not permit an attorney to take advantage of a debtor by putting him or her into a bankruptcy case both inappropriate from a strategic perspective (*inter alia*, in light of the discharge delay) and in which the debtor could not possibly succeed. No announcement of such a standard by this Court, by the District Court or by the First Circuit should have been necessary.

*Id.* at 110.

I respectfully disagree with the categorical reasoning of the Bankruptcy Court in this regard. In the first instance, it is not so clear that Puffer's Chapter 13 plan was "doomed from the outset" – in fact, Puffer faithfully made the $100 payments for some twenty-five months. Nor is it out of the question that Puffer (who had prior to being laid off earned a healthy income) might not have been able to return to work and "do the right thing" by his creditors, as he professed was his desire in paying at least something over the plan's thirty-six month duration. Notwithstanding, it was apparent that given Puffer's parlous financial condition, bankruptcy offered his only realistic hope of escaping the clutches of his creditors. While Chapter 13 (as the Bankruptcy Court concluded) may not have been the best choice, under the circumstances it "cannot be presumed that the [Chapter 13] bankruptcy [was] somehow not for the debtor's benefit." *In re Beck*, No. 06-40774, ECF No. 35, at *14.

Of more immediate importance is the fact that Berliner's experiment with a fee-first plan was not indefensible. As of the date of Puffer's initial bankruptcy filing in

13

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 14 of 16

February of 2008, only a few published cases had addressed the propriety of fee-only Chapter 13 plans, while anecdotal evidence suggested that the practice had been accepted in at least some jurisdictions. *See* Tr. at 45; *see also* Br. for Nat'l Ass'n of Consumer Bankr. Attorneys, 2011 WL 6961709, at *15 n.1 (asserting that the Association's members "have routinely had fee-only plans confirmed in other jurisdictions"). Even today, no clear consensus on the issue has emerged. *See In re Puffer*, 674 F.3d at 79 (noting that the issue "has divided the bankruptcy courts"). While some courts have approved fee-only plans under what the First Circuit might deem "special circumstances," others have required no such showing. *Compare In re Crager*, 691 F.3d at 675-676; *In re Molina*, 420 B.R. at 833, *with In re Williams*, No. 07-00396 (E.D.N.C. Oct. 25, 2007), ECF No. 29, at *10; *In re Beck*, No. 06-40774, ECF No. 35, at *12-14. Nor was Puffer's filing marred by the "plus" factors that have led courts to find a fee-only plan to have been filed in bad faith. *Cf. In re Lavilla*, 425 B.R. 572, 577 (Bankr. E.D. Cal. 2010) (noting that the court had previously found an absence of good faith where the debtor was ineligible for relief under either Chapter 7 or Chapter 13 because of a previous filing and "was simply stalling his creditors until he would be eligible for a [C]hapter 13 discharge in a new case"); *In re Sanchez*, 2009 WL 2913224, at *1, *3 (Bankr. D.N.M. May 19, 2009) (finding a lack of good faith where debtors had a history of incurring "debts they are

Case 3:12-cv-30190-RGS   Document 25   Filed 05/06/13   Page 15 of 16

unable to repay and then seek[ing] bankruptcy protection every few years in order to alleviate their debt burden"); *In re Lehnert*, 2009 WL 1163401, at *3-4 (Bankr. E.D. Mich. Jan.14, 2009) (sustaining an objection to a fee-only plan where debtors understated income and failed to turn tax returns over to the Trustee); *In re Paley*, 390 B.R. 53, 59-60 (Bankr. N.D.N.Y. 2008) (finding that a plan whose duration failed to comply with the applicable commitment period and "[was] tied only to the payment of attorney's fees simply [was] an abuse of the provisions, purpose, and spirit of the Bankruptcy Code"); *In re Dicey*, 312 B.R. 456, 459-460 (Bankr. D.N.H. 2004) (sustaining an objection to a plan in part because the debtors only sought bankruptcy protection following the entry of a $40,000 judgment against the co-debtor for an intentional tort and no other creditors were pursuing the debtors at the time).

The First Circuit has now spoken, and the bankruptcy bar would be well advised to file future fee-only plans in only the most extraordinary and compelling of cases. Berliner's conduct, however, should not be viewed through the prism of hindsight nor should he be sanctioned for doing something that fell comfortably within the range of what many bankruptcy lawyers (and judges) at the time would have thought reasonable. *Cf. Burns v. George Basilikas Trust*, 599 F.3d 673, 677-678 (D.C. Cir. 2010) (holding that the bankruptcy court abused its discretion in imposing sanctions on debtor's counsel where counsel's argument was not precluded by

15

binding authority but in fact was supported by an unreported district court decision). In other words, in this case (if not in future cases), Berliner should have his fee.[56]

## ORDER

For the foregoing reasons, the Bankruptcy Court's finding of no special circumstances in <u>AFFIRMED</u>.  The fee order is <u>VACATED</u> and the case is <u>REMANDED</u> for further proceedings consistent with this opinion.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[5] What under the lodestar method constitutes reasonable attorney compensation in this case is for the Bankruptcy Court to determine.

16